Good morning, Your Honors. May it please the Court, my name is Anna Heisel, and I represent the petitioner Mr. Ramirez-Perez. Thank you for having me. Before I begin, I'd like to reserve at least three minutes of my time for rebuttal. That's fair. Thank you. The Board of Immigration Appeals erroneously denied the petitioner's attempts to seek redress for the fundamental ineffective assistance of his former counsel from the years 1999 to 2002, and then again after discovering willful and egregious fraud committed by that same lawyer on him in 2014. In his motions, the petitioner highlighted specific examples of deficient conduct this Court has deemed ineffective and the shocking attempt by counsel to taint the petitioner's matter. Yet the BIA erroneously denied motions, despite the government failing to file a single opposition or argument in all three matters. First, the Board did not address any of the arguments raised that his prior counsel was deficient in his performance, which is required by law. This case... Well, the whole reason why you're raising deficient performance of his counsel is to establish equitable tolling. Is that right? Well, Your Honor, equitable tolling is... Clarify or make clear to me exactly what it is you're asking us to decide. So there are several petitions for review. They're all up on motions to reopen. Correct. Is that right? Yes, correct, Your Honor. And the first motion to reopen... Excuse me, I'm sorry, if I can clarify. Motion one and motion three were motions to reopen. Motion two was a motion to reconsider the denial of motion one. It was also treated by the BIA, part of it was treated as a motion to reopen. Correct. Okay, so the first motion to reopen is technically time barred. That's the position of the government and that... Well, was it filed within 90 days of the final order of removal or whatever the test... No, it was not. Okay, so it's time barred, right? So you have to get over the time bar. Correct. Equitable tolling. Correct. Our case law says that if there's ineffective assistance of counsel, you can possibly... It's a way of establishing equitable tolling. Correct, Your Honor, definitely. Your first argument is you're telling us is that the lawyer was ineffective. Yes. Okay, the other part of the test is that the petitioner has to be somewhat diligent. Correct, Your Honor. And then there has to be some prejudice. Correct, Your Honor. In this matter, the petitioner was able to show all three. He was able to show that the counsel was deficient in his performance in his 1999 proceeding as well as his appellate work in 2002. He was able to show that he had plausible grounds at the time and that the deficiency in the performance by the counsel, in fact, did affect the outcome of his proceeding, where here in the Ninth Circuit, you only need to show that it may have affected the proceeding. And the board erred, holding him to a higher standard, showing that he had to show that he would be able to prove his claim later or then. And then third, he did act diligently. He did not learn of the ineffective assistance really truly until ICE showed up at his home in 2002 and removed him from the United States. Immediately thereupon, he sought not one, not two, but three different consultations from three different lawyers. And after those consultations, each one of those attorneys told him, quote, nothing could be done. Not one advised him that there may have been ineffective assistance of counsel. Not one advised him about the ability to possibly the avenue of reopening his matter. Not one of them advised him of anything, just that, quote, nothing could be done. And I think that that's extremely important here because in this circumstance, for this petitioner, you have to look at his circumstances, his level of education, his experience, et cetera, and you're not looking at somebody who has legal expertise or any type of high education that may render them to continue to seek counsel. Can I ask about the question of the petitioner's son? And he discussed the fact that his name was not on his son's birth certificate with Attorney Bove. So why doesn't that suggest that he was on notice of ineffective assistance of counsel when his attorney failed to address that at the merits hearing? Well, I think that he may have the judge, Mr. Bove hardly elicited any testimony on direct in the proceeding, and he didn't ask a single question on redirect. However, the judge did inquire about the circumstances of the son and asked the petitioner, why is it that you weren't on the son's birth certificate? And he gave some explanation, but it was very obvious from the transcript that the judge and even government counsel seemed to be confused. They seemed to not have a lot of clarification still even after the petitioner's answers. But afterwards, you know, the fact that the petitioner did not necessarily understand that the judge didn't understand clearly what the seriousness of that issue was, I don't think that the petitioner necessarily knew that that rises to the level of ineffective assistance of counsel. So to jump ahead from 2002 to 2014, or is it 2012? Well, in 2012, so 2002, after he was removed, he sought counsel from three separate attorneys. Then he essentially was told nothing could be done, so a reasonable person would think, there's nothing I can do. He reentered the United States illegally, and in 2012, he was reinstated and removed back outside the United States. At that moment, he sought again counsel from another attorney, and she also told him there was nothing that could be done. So here you now have four licensed attorneys telling him there's nothing he can do. Fast forward to that. And why did they tell him there's nothing that he could do? It would call for speculation, Your Honor, but it's my understanding and my experience that there are a lot of practitioners that if they see a complicated case or they don't necessarily themselves are not knowledgeable about these situations, they may give ill advice to the petitioner, which is exactly what happened in this case. I think that it's really important to— So when did he end up at your office? I'm sorry? When did he end up at your office? Well, actually, he didn't. He remained outside the United States, and he's still in Mexico, has not returned to the United States since. It was actually at a community event that his wife, who's here in the United States, met me in late 2013, around August 2013. It was a very casual sort of conversation. We said, oh, let's—I explained to her, well, something sounds a little off, but again, it's speculation. We don't have any of the records. We don't have any of the documents. We know nothing about the case. So we started to investigate and look into the situation. It took some time. These are decades-old records requiring requests for the records. The proceedings are on tapes, not digital audio recordings, tapes that don't play on regular cassette audio players. It took some time. And so what ended up happening was that we went in, we went to—we looked into the situation. It took some time, given the circumstances of him being outside the country. His son was not available for a majority of the period due to some serious issues with juvenile situation. And so we had to take—unfortunately, it took a little bit longer than we had wanted to. However, this Court has held that even though there may be a delay, the time bar can be waived, or excuse me, numerical and time limitations can be waived, and that really the Court needs to look at the intent, and which is to preserve due process in this situation. And this Respondent—or excuse me, this Petitioner— says, isn't that substantial evidence that supports the BIA's view that there was no diligence? It doesn't—you know, that kind of evidence doesn't say that's the only way you can find. I mean, there is evidence to support the BIA's position, isn't there? You just recited it. I'm sorry. I guess I'm—if you could clarify which evidence, which particular time period that you're referring to. You went through, you know, all the delays by the Petitioner. Well, there was no— And you say there are, you know, circumstances that excuse this, but it doesn't necessarily mean the BIA has to excuse it, does it? No, the Board does not have to excuse it. However, the Board was ignoring— So what is that? I mean, that's a legal error? That is a legal error, Your Honor. The Court has—this Court has clearly mandated that, in the past, through Abagonian, that there must be a fact-specific analysis conducted on whether or not due diligence and equitable tolling should be rendered. Okay. It looks like I'd like to raise more of my time. I'll give you some time for rebuttal. Okay, thank you, Your Honor. Thank you. Hear from the government. Yes, Your Honor. Good morning, Your Honors, and may it please the Court, Marina Stevenson, for the respondent, the Attorney General. I believe the two issues most pressing to this Court are the acts of diligence and, even in the event of diligence, whether the petitioner suffered any prejudice by the original representation. On the diligence point, before I forget, respond to the petitioner's argument that the Board made a legal error because it did not engage in each of the steps required by the case law. Yes, Your Honor.  Well, Your Honor, in the original opinion, or the original Board decision of October 10th, the Board looked to whether he had demonstrated why there was this lack of diligence between 2002 and 2012, I believe. Court's indulgence. The immigration judge found there was a cancellation of October 2, yet presented a motion to not file until July of 2012. No due diligence was shown. And taking everything that was in the petitioner's brief, and even without conceding, every event that transpired prior to the petitioner meeting with Attorney Heisel in 2013, even if we assume and go with the petitioner on this journey and say March 15th, the date that he signed his bar grievance of 2014 is the exact same day that he discovered and knew and recognized that there was ineffective assistance of counsel. The fact of the matter is the motion to reopen was not received by the Board until July 8th, 2014. That's 112 days, Your Honor. So even if we accept all of things being true. Do we have a hard and fast rule on the number of days? Yes, Your Honor. By statute, it's 90 days. Yes, Your Honor. 90 days to reopen.  In the original hearing, there's all of this argument as to whether he had the qualifying relative. But the immigration judge made the even if and did an analysis of the child at that time to determine that there was no exceptional or unusual hardship. The child was with the petitioner one weekend a month. I believe there was actually testimony that stated that of the prior three months, the child had been with his father for, I believe, one weekend. Furthermore. But again. Yes, Your Honor. Go back to the all the way back to was it 1999. Yes, Your Honor. And the equitable tolling issue. Yes, Your Honor. And Mr. Bove's, the allegation now of ineffective assistance of counsel. And I want to also question you about the fraudulent filing by Mr. Bove in 2012. 2014. 2014, Your Honor. 2014. Yes, Your Honor. If Mr. Bove had been doing his job, the argument would be, the petitioner would have been able to present to the various agencies the impact upon his child. And that was not done here. Yes, Your Honor. And if we're looking to it, if we go to the 2000, or a bigger pardon, the 1999 decision, the exceptional and extremely unusual hardship as an initial matter is, generally speaking, not a reviewable finding. But if you go to look at it, he talks to. And the mother died shortly after childbirth. Correct, Your Honor. The mother was 16 at the time, and I believe she was 21 at the time. So he's the only, the petitioner is the only biological parent. As of the record that was presented, there was no biological parent, as he was not on. Not the problem. Well, Your Honor, no, because the immigration judge still did an analysis, even if he had a qualifying relative. He did an exceptional and an extremely unusual hardship. And with all due respect, the 1999 decision is not the decision that's under review. If we look at what he avows to in his motion to reopen, all of the hardship that he's claiming is his hardship that he's trying to seek and obtain custody. It doesn't actually speak to what the hardship that the child will suffer. And this court has held that an extreme and unusual hardship is serious and pressing to include health issues and extreme academic special needs. Neither of those were presented to the board. So even if there's an assumption of diligence, which the government does not concede at all, there's still no prejudice. Simply because your attorney is ineffective does not make you eligible. Just to, you know, play devil's advocate. Yes, Your Honor. It's my favorite game.  Yes, Your Honor. What we see is a lack of findings by the board, you know, as required by case law, particularly Abagayan versus Holder. Why not remand for further findings and development? Well, frankly, Your Honor, it would be futile. Because in conjunction with the equitable tolling, which I believe is what you're getting to, there's this second part that's the exceptional and extremely unusual hardship, which is not reviewable, and there's been no evidence. The first motion to reopen talks about the hardship that the father's desire to obtain custody. The second motion to reopen, the son submits an affidavit that says, My father deserves to be here. This has been stressful for the family. This court has, and I believe everybody has recognized that family separation is hard. I believe April is military child appreciation month. I mean, family separation is hard, and the board acknowledges that. But that's not the standard here. The standard is exceptional and extremely unusual hardship. And he needed to demonstrate that. And the fact of the matter is there were none of these compelling issues in the original case. Was he represented by counsel when this needed to be, when he could have demonstrated this? Was he effectively represented by counsel? Your Honor, frankly, the government's position has been that that is not an issue this court needs to address. We did not opine on it in our briefs. Could you speak to Attorney Bove's actions in 2014? Certainly, Your Honor. As a member of the bar, I feel for Ms. Heisel that her name was used to submit what was filed. But it doesn't go to the petitioner's harm, again. I understood the petitioner to be saying that because this document by Mr. Bove became part of the administrative record, he somehow was not provided with notice so that he could respond to the ineffective assistance of counsel claim. And the board considered that and said notwithstanding the new allegations, there remains no satisfactory explanation with a respondent's delay from 2002 to 2014. So the board did take that into consideration. And Attorney Heisel has asked us – That goes back to the equitable tolling issue. Your Honor, the equitable tolling would be for the motion to reopen, the original motion to reopen in October. As I said, even if we were to go and accept that he found out that on March 15, 2014, that he was the victim of ineffective assistance of counsel, there's been a motion to take the bar agreements as judicial notice. If the court's going to take it as judicial notice, it needs to take the entire document under judicial notice, which says that although he signed the March 15, 2014 letter, he did not mail it to the board until, I want to say, July of 2014. So he didn't even comply with Lazada. Now, that's beyond the scope of the board, but we're talking about due diligence. And the due diligence, and with respect to this notice of taking judicial notice, even if March 15 is the date, he still didn't put the stamp on the envelope and mail it until well after his first motion to reopen was filed. Your Honor, that cannot be diligence. And my time, I've gone over my apologies to the court. Fine. Thank you, Your Honor. Thank you, counsel. I'll give her a minute. Thank you, Your Honor. Due diligence does not mean expedited processing, and it doesn't mean maximum diligence either. In this particular case, to be candid with the court, this was my first experience bringing an effective assistance of counsel claim. So if there was any short delay from the moment that I spoke with Mr. Ramirez-Perez, the petitioner, in March, to be able to file by July 1st, it was actually July 1st that we filed it, that delay should not be attributed to the petitioner's lack of diligence. Maybe you could just address the prejudice prong that is a follow-up to the conversation that Judge Katzman was having with counsel. Yes, Your Honor. As far as prejudice goes, first, it is clear in precedent that an affidavit in Basin v. Gonzales, that affidavit by the petitioner on its own, unless there's something inherently unbelievable about it, should be taken on its face. And here, the fraud that was conducted upon Mr. Ramirez-Perez, both then and now, is relevant and it's probative to the ineffective assistance of counsel. And it shows, first of all, prejudice was already demonstrated because it's very clear from the judge's decision that the lack of presentation of any type of documentation, presentation of witnesses, any type of presentation in the hearing at all, did, in fact, affect the outcome of the proceedings. The government, I think, position is that the prejudice you have to show is entirely different from the kind of prejudice you're talking about. In other words, the prejudice you have to show because the economic or the immigration benefit that was lost is for the benefit of the American citizen child. In other words, you have to show that this resulted in, what, exceptional hardship to the child. Isn't that what the government's position is? That's the prejudice you have to show? With all due respect, I think that's error. In an ineffective assistance of counsel claim, you only need to show that the deficiency in the performance by the counsel may have affected the outcome of the proceeding. You do not need to show or prove that you would win or lose the claim. No, but the outcome that ineffective assistance has to affect is that no, there's no showing of exceptional harm or exceptional hardship. There's no evidence of that at all, is there? Well, there was definitely some evidence of it. It was not properly presented before the courts, and there was definitely evidence of it within the context of the petitioner's affidavit that was submitted to the Board of Immigration Appeals in his affidavit. And then later, again, in Motion 3, there was significant documentation as well that was also submitted. But again, the petitioner is not required to actually prove his case in the motion to reopen, only that he is statutorily eligible to seek the grounds that there was ineffective assistance and he was prejudiced. Oh, no, I think to show prejudice, you have to show something more than statutory eligibility, don't you, that there has to be some prima facie showing of some, you know, some showing of merit to the case. Yes, a viable claim, and the fact that this petitioner, this child, that the fact that there was a custody issue, a paternity issue involved, and that there was a lack of presentation. No, but none of that goes to, you know, extreme and exceptional hardship to the child. Well, with all due respect, Your Honor, I think that a child's inability to be with a biological parent after the death of the other definitely raises concerns on that it's definitely not a common situation. That's a hardship that happens in every separation of child and parent, right? I think that there is. So I think the use in the statute of the term, you know, exceptional or extreme has to be something more than separation itself between parent and child. Separation? We see that all the time. Everybody assumes, and I think correctly, that like on these, you know, the recent incidents of family separation, that the separation harms the child and the parent maybe, but still that's not extreme and exceptional. Sometimes. It happens to everybody who's separated. Yes, there are separation issues in every case. However, the essentially orphanage of this child, not by choice, can be significantly different and distinguished, I think, in this case. Okay. Thank you, counsel. We appreciate your arguments. Thank you. The matter is now submitted.
judges: Tashima, Paez, Katzmann